1   FENNEMORE CRAIG, P.C.
     Norman D. James (No. 006901)
2   Todd Wiley (No. 015358)
     3003 North Central Avenue
3   Suite 2600
     Phoenix, AZ 85012-2913
4   Telephone: (602) 916-5000
     Email: njames@fclaw.com
5
     Attorneys for Defendant Wellton-Mohawk
6   Irrigation and Drainage District

7

8              UNITED STATES DISTRICT COURT

9                DISTRICT OF ARIZONA

10  QUECHAN INDIAN TRIBE OF THE FORT
     YUMA INDIAN RESERVATION, a federally
11  recognized Indian Tribe,

12            Plaintiff,

13            v.

No.: CV070677-PHX-JAT

14  U.S. DEPARTMENT OF THE INTERIOR;
     DIRK KEMPTHORNE, as Secretary of the
15  Interior; U.S. BUREAU OF RECLAMATION;
     ROBERT W. JOHNSON, as Commissioner,
16  Bureau of Reclamation, U.S. Department of
     Interior; LARRY WALKOVIAK, as Acting
17  Regional Director, Lower Colorado Region,
     Bureau of Reclamation, U.S. Department of
18  Interior; JAYNE HARKINS, as Acting Regional
     Director, Lower Colorado Region, Bureau of
19  Reclamation; JIM CHERRY, as Area Manager,
     Yuma Area Office, Bureau of Reclamation;
20  WELLTON-MOHAWK IRRIGATION AND
     DRAINAGE DISTRICT; CHARLES W.
21  SLOCUM, as General Manager, Wellton-
     Mohawk Irrigation and Drainage District;
22  ARIZONA CLEAN FUELS YUMA, LLC;
     GLENN McGINNIS, as Chief Executive
23  Officer, Arizona Clean Fuels Yuma, LLC,

24           Defendants.

**WELLTON-MOHAWK
IRRIGATION AND DRAINAGE
DISTRICT'S MOTION TO
DISMISS**

25

26

FENNEMORE CRAIG, P.C.
PHOENIX

1    Defendant Wellton-Mohawk Irrigation and Drainage District ("District") hereby

2    moves to dismiss Plaintiff's Complaint for Injunctive Relief under Federal Rules of Civil

3    Procedure 12(b)(1), 12(b)(2) and 12(b)(6).[1]    This motion is supported by the Declaration

4    of Charles W. Slocum which is filed concurrently with this Motion ("Slocum Decl.").

5    **I.    BRIEF STATEMENT OF THE MOTION.**

6    In its Complaint, Plaintiff Quechan Indian Tribe of the Fort Yuma Indian

7    Reservation ("Plaintiff" or "Tribe") alleges that the Bureau of Reclamation ("BOR")

8    violated the National Environmental Policy Act of 1969, 42 U.S.C. § 4332, *et seq.*

9    ("NEPA") and the National Historic Preservation Act, 16 U.S.C. § 470, *et seq.* ("NHPA")

10   by issuing BOR's *Final Environmental Impact Statement for Transfer of Title to*

11   *Facilities, Works and Lands of the Gila Project, Wellton-Mohawk Division to Wellton-*

12   *Mohawk Irrigation and Drainage District* dated December 2006 ("FEIS").[2]    In the FEIS,

13   BOR conducted an extensive analysis under NEPA and NHPA of the potential

14   environmental and cultural resource impacts resulting from transfer of title for 47,538

15   acres of federally-owned works, facilities and lands ("Transfer Lands") to the District (the

16   "Title Transfer").    FEIS at ES-3.    BOR determined that the Title Transfer will not have

17   any significant impacts on the environment and issued a *Record of Decision of the Lower*

18   *Colorado Region for the Wellton-Mohawk Title Transfer* on March 26, 2007 ("ROD")

19   approving the Title Transfer.

20   Plaintiff has filed suit to prevent the Title Transfer.    In the Complaint, Plaintiff

21   named the District as a defendant along with Mr. Slocum, General Manager of the District

22   (collectively referred to as "the District" in this motion). As stated, the focus of the

---

[1]    Contemporaneously with this motion, the District has filed a Response to Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue ("District Response").    The District incorporates that response herein by reference.

[2]    The FEIS has been filed separately as an attachment to the District's Response.

1    Complaint is alleged violations of NEPA and NHPA by the BOR.  Review is sought under

2    the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.    Plaintiff does not state any

3    claims against the District or Mr. Slocum in the Complaint.

4        As a matter of law, the Court should dismiss Plaintiff's Complaint against the

5    District because Ninth Circuit law dictates that a non-federal party cannot be a defendant

6    in a NEPA/NHPA case.  *Wetlands Action Network v. U.S. Army Corps of Eng.*, 222 F.3d

7    1105, 1114 (9th Cir. 2000); *Churchill County v. Babbitt*, 150 F.3d 1072, 1082, *as*

8    *amended by* 158 F.3d 491 (9th Cir. 1998).    Instead, only federal agencies may be

9    defendants in a NEPA/NHPA case.

10   **II.**    **FACTUAL BACKGROUND.**

11       **A.**    **The Wellton-Mohawk Irrigation and Drainage District.**

12       The District was created by an Act of the Arizona State Legislature on July 23,

13   1951, and is a political subdivision of the State of Arizona.  Slocum Decl. at ¶ 3.  The

14   District is an Arizona municipal corporation that provides domestic water, electrical

15   power, flood control, and other community services to the Wellton and Mohawk Valleys.

16   *Id.*  The District is part of the federal Gila Project.  *Id.*

17       The District has entered into contracts with the Secretary of the Interior regarding

18   the operation and maintenance of the District's irrigation and drainage facilities and use of

19   Colorado River water.   Pursuant to those contracts, the District was responsible for

20   operation, maintenance, and repair of extensive irrigation and drainage works and

21   facilities, including 378 miles of canals, laterals and return flow channels.  *Id.* at ¶¶ 5-6.

22   The District had been responsible for operation of the works and facilities since 1957.  *Id.*

23   at ¶¶ 5-7.   The District has a consumptive use allocation of 278,000 acre feet of Colorado

24   River water, which it uses to irrigate approximately 63,000 acres of agricultural lands

25   within the District.  *Id.*

26

1    The impact of the District on the economy in the Wellton and Mohawk Valleys and
2    specifically on the livelihoods of District members is significant. *Id.* at ¶ 8. The District
3    provides the power and water that drives the area's economic engine. The area within the
4    District is rural in character and dependent on the success of the farms and agriculture-
5    related businesses located there. The District's water delivery, drainage and power
6    facilities form the backbone of the area's economy. *Id.*

7    **B.    The Title Transfer.**

8    Construction of the Wellton-Mohawk works and facilities involved a financial
9    commitment by the District under a repayment contract with the United States. The
10   District has fully repaid the project construction costs relating to works and facilities in
11   the District and was provided a certificate of discharge on November 27, 1991. *Id.* at ¶ 9;
12   FEIS at 1-13. The "works and facilities" includes those facilities constructed by BOR for
13   the District and used for operation of the District. Slocum Decl. at ¶ 9.

14   In February 1998, BOR indicated its interest in a title transfer for the works,
15   facilities and lands of the District. Slocum Decl. at ¶ 11. On July 10, 1998, the District
16   and BOR signed a Memorandum of Agreement ("MOA")[3] that covers the details of the
17   Title Transfer. *Id.* at ¶ 12; FEIS at ES-1. For the last nine years, the District and BOR
18   have worked to complete the Title Transfer. Slocum Decl. at ¶ 11. The District has
19   expended approximately $11,000,000 in time, purchase costs, consultants, surveys and
20   related items pertaining to the Title Transfer. *Id.* at ¶ 35.

21   The Title Transfer includes all works and facilities for which full repayment has
22   been made by the District and the acquisition of additional lands for exchange. Those
23   additional lands include BOR lands "withdrawn from public use for Reclamation
24   purposes" ("Withdrawn Lands") and "lands within or adjacent to the Division acquired by
25   the United States" ("Acquired Lands") under certain public laws. MOA at 2-4, ¶ 1(a),

26   ───────────────
[3] The MOA is attached as Appendix A to the FEIS.

1   ¶ 1(t).  Those additional lands are not part of the District's operations, and the District is

2   obligated to pay the appraised fair market value for those lands.  MOA at 4, ¶ 2(b).

3       In total, the Title Transfer involves transferring ownership of 47,538 acres of land

4   (including rights-of-way and easements) to the District, which has operated and

5   maintained the project for 50 years.  Slocum Decl. at ¶ 14; FEIS at ES-3.  The federal

6   lands and easements for District works and facilities comprise approximately 28,197 acres

7   within the District boundary.  Slocum Decl. at ¶ 14.  The other lands comprise over

8   19,000 acres located both within and adjacent to the District.  *Id.*  The District will

9   continue to operate the works and facilities, and the Title Transfer will not change the

10  operation of the project. *Id.* at ¶ 12; FEIS at 2-5 to 2-6.

11      **C.     The Wellton-Mohawk Transfer Act.**

12      On or about June 20, 2000, the Wellton-Mohawk Transfer Act (attached as Exhibit

13  A) was enacted and expressly authorized the Title Transfer:

14          The Secretary of the Interior (Secretary) is authorized to carry out the terms
           of the Memorandum of Agreement No. 8-AA-34-WA014 (Agreement)
15          dated July 10, 1998 between the Secretary and the Wellton-Mohawk
           Irrigation and Drainage District (District) providing for the transfer of
16          works, facilities and lands to the District, including conveyances of
           Acquired Lands, Public Lands and Withdrawn Lands, as defined in the
17          Agreement.

18  The Transfer Act does not contain any provisions allowing a private action against BOR

19  or the District for enforcement of the Act or MOA.

20      **D.     BOR's NEPA and NHPA Process.**

21      BOR initiated the NEPA/NHPA process with a NEPA kickoff meeting in

22  September 2001. *Id.* at ¶ 16.  Throughout the process, BOR consulted with various Indian

23  Tribes under Section 106 of the NHPA, including Plaintiff.  *Id.* at ¶¶ 27-28  Since July

24  2004, BOR has conducted monthly tribal consultation meetings regarding the Title

25  Transfer.  *Id.*  BOR has conducted over 30 government-to-government meetings with

26  tribal representatives from May 2002 through April 2007. FEIS at 5-4.

BOR circulated the Draft EIS ("DEIS") for public comment in August 2003. Slocum Decl. at ¶ 16. BOR also undertook an extensive and detailed investigation and survey program for cultural resources within the Transfer Lands. FEIS at 3-30 to 3-40, 5-5 to 5-6. The program was conducted by archaeological consultants Statistical Research, Inc. ("SRI"). Slocum Decl. at ¶¶ 24-25. From 2003-2005, SRI conducted a Class I inventory (literature and archival search) of archeological investigations in the Lower Gila Valley, a Class II/III inventory of approximately 5,900 acres of undisturbed land by pedestrian surveys, a geomorphic analysis of the project area, and a Class III inventory of 4,833 acres of undisturbed lands in the Title Transfer. FEIS at 3-36 to 3-40.

In February 2005, BOR, with the District's consent, removed 2,124 acres of "culturally sensitive lands" from the Title Transfer. FEIS at 3-40. The 2005 Class III survey identified only 19 eligible sites within the remaining Transfer Lands. FEIS at 3-40. According to BOR, "the surveys conducted for this project constitute the most comprehensive cultural resource inventory conducted in this region to date." FEIS at 3-35. "Based on the overall survey results, approximately 92.5 percent of significant cultural resources were identified in the project area." FEIS at 3-38. The 47,538 acres of Transfer Lands contain *only* 19 historic properties (5 historic; 13 prehistoric; and 1 mixed). FEIS at 3-40. BOR issued the FEIS in December 2006.

**E.      The March 27, 2007 Record of Decision and Initial Title Transfer.**

BOR issued its Record of Decision ("ROD") on March 26, 2007 (attached as exhibit A to the District's Response). The Title Transfer will occur in phases and has been partially implemented through a quit claim deed ("QCD") issued by BOR to the District. ROD at 1. On March 26, 2007, BOR executed a QCD which conveyed approximately 39,000 acres of Transfer Lands to the District. Slocum Decl. at ¶ 30. Those 39,000 acres do *not* contain any known historic or eligible sites under the NHPA,

FENNEMORE CRAIG, P.C.
PHOENIX

5

1    and the 19 eligible sites within the Transfer Lands are located on lands which have not
2    been transferred to the District.  ROD at 5.

3    　　　　The District conveyed 1,460 acres of the initial Transfer Land to Arizona Clean
4    Fuels ("ACF") on March 26, 2007.  Slocum Decl. at ¶ 30.   Consequently, the 39,000
5    acres of Transfer Land conveyed to the District on March 26, 2007 are no longer owned
6    by the federal government.   The District recorded the QCD with the Yuma County
7    Recorder on March 26, 2007 and the District is the record title holder and owner of that
8    land under Arizona law. *Id.* ACF recorded the QCD for its 1,460 acres with the Yuma
9    County Recorder on March 26, 2007 and ACF is the record title holder and owner of that
10   land under Arizona law. *Id.*

11   　　　　The underlying circumstances also indicate that the Tribe knew about the likely
12   issuance of the ROD and QCDs well before March 26, 2007.  As early as January 2007,
13   the Tribe's attorneys threatened to file suit against BOR relating to the Title Transfer. *Id.*
14   at ¶ 32.  In a January 30, 2007 letter from the Tribe's attorney to BOR, the Tribe requested
15   that "BOR postpone issuance of the ROD and the land transfer until the Tribe's concerns
16   have been resolved." *Id.*  Subsequently, the Tribe and BOR had various meetings and
17   discussions relating to the Title Transfer, and the Tribe again requested that BOR delay
18   issuance of the ROD and completion of the land transfer. *Id.*  BOR delayed issuance of
19   the ROD and the QCD for the initial Transfer Land until March 26, 2007. *Id.*

20   　　　　On March 23, 2007, the District was informed by BOR that the attorneys for the
21   Quechan Tribe had contacted BOR and informed the agency that they were told not to
22   take any further action regarding the Title Transfer. *Id.* at ¶ 33.  Based on that
23   representation, the District and BOR completed the initial land transfer on March 26,
24   2007, and the District then completed the transfer to ACF. *Id.*

25
26

**F.     Plaintiff's Complaint for Injunctive Relief.**

On March 29, 2007, the Tribe filed the 36-page Complaint along with a 22-page application for issuance of a temporary restraining order (plus a nine-page declaration from Bridget Nash-Chrabacz). The Tribe did not take any legal action to prevent issuance of the ROD and execution of the QCDs prior to filing its Complaint on March 29, 2007.

In the Complaint, the Tribe seeks "preliminary and permanent injunctive relief, specifically an order enjoining any further implementation of the land transfer until the Bureau complies with its legal obligations under NEPA, NHPA and the APA." Complaint at ¶ 9. For the lands already transferred to the District, "the Tribe seeks injunctive relief prohibiting any subsequent transfers and prohibiting any land disturbing activities on such land by the District and any of its transferees, including ACF, until the Bureau complies with its legal obligations under NEPA, NHPA and the APA." *Id. See also id.* at 35-36 (prayer for relief). Further, the Tribe seeks to void the "property conveyances from the Bureau of Reclamation to the District, and from the District to ACF, or any other conveyances of Transfer Lands to the extent necessary to ensure compliance with the Bureau's obligations under NEPA, NHPA, and APA, and other applicable federal law." *Id.* at 36, ¶ 4 (prayer for relief).

The jurisdiction and venue allegations of the Complaint are contained in paragraphs 10 and 11, but do not mention the District or Mr. Slocum. The Tribe also does not allege that the District or Mr. Slocum are necessary and indispensable parties under Federal Rule of Civil Procedure 19(a). The Complaint contains four claims for relief against BOR. Specifically, the Tribe claims (1) that BOR "violated the National Environmental Policy Act" (Complaint at ¶¶ 56-132), (2) that BOR "violated the National Historic Preservation Act" (*id.* at ¶¶ 133-168), (3) that BOR "violated the Wellton-Mohawk Transfer Act of 2000" (*id.* at ¶¶ 169-173) and (4) that BOR "violated the Administrative Procedures Act" (*id.* at ¶¶ 174-182). The Complaint does not state

1  any claim for relief against the District or Mr. Slocum, or otherwise allege that the District

2  and Mr. Slocum have violated any laws.

3  **III.    THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT AGAINST THE DISTRICT AND MR. SLOCUM.**

4

5      **A.    Governing Ninth Circuit Law Dictates that the District Cannot Be Named As a Defendant In a Compliance Action Under NEPA and NHPA.**

6

7  As a matter of law, Plaintiff's Complaint against the District and Mr. Slocum must

8  be dismissed for one overriding reason: "because a private party cannot violate NEPA, it

9  can not be a defendant in a NEPA compliance action." *Wetlands Action Network*, 222

10  F.3d at 1114. As a general rule in the Ninth Circuit, "the federal government is the only

11  proper defendant in an action to compel compliance with NEPA." *Id.*, citing *Churchill*

12  *County*, 150 F.3d at 1082. *See also Forest Cons. Council v. U.S. Forest Serv.*, 66 F.3d

13  1489, 1499 n.11 (9th Cir. 1995) ("In that respect, we agree with *Sierra Club*'s statement

14  that 'in a lawsuit to compel compliance with NEPA, no one but the federal government

15  can be a defendant'"); *Sierra Club v. Environmental Protection Agency*, 995 F.2d 1478,

16  1485 (9th Cir. 1993) ("Since NEPA requires only action by the government, no private

17  party can comply with NEPA. It is for that reason that in a lawsuit to compel compliance

18  with NEPA, no one but the federal government can be a defendant"); *Portland Audubon*

19  *Society v. Hodel*, 866 F.2d 302, 309 (9th Cir. 1989) ("In a suit such as this, brought to

20  require compliance with federal statutes regulating governmental projects, the

21  governmental bodies charged with compliance can be the only defendants"). "The

22  rationale for [that] rule is that, because NEPA requires action only by the government,

23  only the government can be liable under NEPA." *Wetlands Action*, 222 F.3d at 1114,

24  *citing Churchill County*, 150 F.3d at 1082. Boiled down, "a private party cannot 'comply'

25  with NEPA and, therefore, a private party cannot be a defendant in a NEPA compliance

26  action." *Churchill County*, 150 F.3d at 1082.

The same analysis applies to Plaintiff's NHPA claims.  Governing Ninth Circuit law holds that NEPA and NHPA are closely related procedural statutes.  *Apache Survival Coalition v. U.S.*, 21 F.3d 895, 906 (9th Cir. 1994);  *San Carlos Apache Tribe. v. United States*, 417 F.3d 1091, 1097 (9th Cir. 2005).  "NHPA's implementing regulations contemplate that NEPA and NHPA review should be integrated closely."  *Apache Survival*, 21 F.3d at 906, *citing Sierra Club v. Clark*, 774 F.2d 1406, 1410 (9th Cir. 1985).  "Any claim for violation of § 106 obligations under the NHPA is against the federal government, not a third party."  *San Carlos Apache Tribe*, 417 F.3d at 1093.

As a matter of law, therefore, Plaintiff's complaint against the District and Mr. Slocum must be dismissed under Rules 12(b)(1), 12(b)(2) and 12(b)(6).  A non-federal party cannot violate NEPA or NHPA, and such party can not be joined as a defendant in a NEPA or NHPA compliance action against a federal agency.

**B.    The District Cannot Be Named as a Defendant under the *Muckleshoot Indian Tribe v. U.S. Forest Service* Decision.**

In its Complaint, Plaintiff argues that this Court has authority to enjoin the District and/or ACF relating to the Transfer Lands pending BOR's compliance with NEPA and the NHPA based on *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 815 (9th Cir. 1999). Complaint at ¶ 9.  *Muckleshoot* does not apply for several reasons.

First, *Muckleshoot* focused on the issue of whether "conveyance of property" by a federal agency moots a NEPA case.  177 F.3d at 815.  In that case, the Court determined only that the property transaction did not moot the plaintiff's NEPA claims because "where the actions involved in a title transfer can be undone, this court will not find meritorious the defense of mootness."  *Id.* at 815.  *Muckleshoot* did not apply established Ninth Circuit law holding that a non-federal party cannot be a defendant in a NEPA case.

Second, *Muckleshoot* does not apply because the private party (Weyerhaeuser Co.) voluntarily intervened in the case and, therefore, subjected itself to the court's jurisdiction.

FENNEMORE CRAIG, P.C.

PHOENIX

1   *Id.* at 804.   By subjecting itself to the court's jurisdiction, Weyerhaeuser provided the

2   court with the authority to "void" the property transaction.   *Id.* at 815.   Absent such

3   voluntary intervention, a court does not exercise any authority over a non-federal party in

4   a NEPA/NHPA compliance action.

5      Here, the District has not intervened or otherwise consented to the jurisdiction of

6   the Court.   To the contrary, the District and Mr. Slocum maintain that they are not proper

7   party defendants in this case and that the Court does not have jurisdiction over them.   This

8   Court should dismiss Plaintiff's complaint against the District under the general Ninth

9   Circuit rule that "private parties cannot be joined as defendants in this lawsuit because

10   NEPA affords no right of action against them."   *Kettle Range Cons. Group v. U.S. Bureau*

11   *of Land Management*, 150 F.3d 1083, 1086 (9th Cir. 1998).

12      Finally, *Muckleshoot* is factually distinguishable from this case.   *Muckleshoot*

13   involved a land exchange between the Forest Service and a private party that included an

14   intact portion of the Huckleberry Divide Trail, an historic property important to the

15   Muckleshoot Tribe.   *Muckleshoot*, 177 F.3d at 803-804.   On appeal, the Ninth Circuit

16   determined that the Forest Service improperly failed to mitigate the adverse effect of the

17   land exchange on the Divide Trail, which had been identified as an eligible historic site.

18   *Id.* at 807-808. Unlike *Muckleshoot*, the Title Transfer does not involve any known and

19   identified cultural site in the initial land transfer completed on March 26, 2007.

20      Further, in *Muckleshoot*, the Ninth Circuit did not undo or void the land exchange.

21   Instead, the Ninth Circuit enjoined further activities by Weyerhaeuser on the exchanged

22   lands "given Weyerhaeuser's representations that it has destroyed approximately ten

23   percent of the property and will continue to do so." 177 F.3d at 815.   This case does not

24   involve similar circumstances.   To the contrary, it is *undisputed* that the refinery project

25   will not proceed until completion of its own separate NEPA and NHPA process.   *E.g.*,

26   FEIS at 1-12.

**C.**   **Ninth Circuit Law Conflicts on the Issue of Whether a Private Party May Be Joined as a Defendant in a NEPA Case Under Rule 19.**

The District expects that the Tribe will rely on Federal Rule of Civil Procedure 19 in naming the District and Mr. Slocum as defendants.   Unfortunately, the Ninth Circuit has not provided a definitive decision addressing the interplay between the *Wetlands Action* line of cases and the application of Rule 19 in joining a non-federal defendant in a NEPA case.   In its Memorandum in Support of Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue, the Tribe argues that the Court has authority over the Transfer Lands even though BOR has "already transferred some lands out of federal control."   Plf. Memo at 2, n.1.   The Tribe cites *National Wildlife Fed. v. Espy*, 45 F.3d 1337, 1342 (9th Cir. 1995) for the proposition that federal courts may "void a property transaction" where necessary.

"While it is true that federal courts generally have no basis for enjoining private parties under NEPA, ... 'Nonfederal defendants may be enjoined if 'federal and nonfederal projects are sufficiently interrelated to constitute a single federal action for NEPA purposes."   *Kettle Range*, 150 F.3d at 1086, *citing Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397 (9th Cir. 1992) (quotation omitted).   Here, Plaintiffs have failed to make any allegations in the Complaint supporting joinder.   As such, the Complaint is deficient in stating a cause of action against the District or Mr. Slocum.   Further, *Espy* squarely conflicts with the Ninth Circuit decisions discussed above establishing the general rule that a non-federal party cannot be a defendant in a NEPA action.

This Court also should not allow the Tribe to name the District as a defendant given the Tribe's prior conduct.   Here, the Tribe (through its attorneys) advised BOR on March 23, 2007 that the Tribe did not intend to pursue litigation relating to the Title Transfer.   Slocum Decl. at ¶¶ 32-33.   In turn, the District and BOR went ahead with the initial land transfer and executed the QCD for the initial land transfer on March 26, 2007.

1  *Id.*    The District then conveyed 1,460 acres to ACF.    *Id.* The Tribe had been

2  contemplating litigation since January 2007 and had ample to opportunity to file suit

3  before issuance of the ROD and execution of the QCDs.    If injunctive relief truly had

4  been imperative, then the Tribe should have made efforts to prevent the initial land

5  transfer before issuance of the ROD.    Under these circumstances, "title to the land

6  already transferred has vested in the private parties," and "at this point it might be

7  impractical to attempt to unscramble the eggs." *Kettle Range,* 150 F.3d at 1083.

8      Both *Espy* and *Kettle Range* consider, but do not resolve, the interplay of Federal

9  Rule of Civil Procedure 19(a) with the Ninth Circuit rule preventing a non-federal party

10  from being a defendant in a NEPA action.    Rule 19(a) provides:

11      **Persons to be Joined if Feasible**.  A person who is subject to service of
    process and whose joinder will not deprive the court of jurisdiction over the
12      subject matter of the action shall be joined as a party in the action if (1) in
    the person's absence complete relief cannot be accorded among those
13      already parties, or (2) the person claims an interest relating to the subject of
    the action and is so situated that the disposition of the action in the person's
14      absence may (i) as a practical matter impair or impede the person's ability to
    protect that interest or (ii) leave any of the persons already parties subject to
15      a substantial risk of incurring double, multiple or otherwise inconsistent
    obligations by reason of the claimed interest.

16
17  Fed. R. Civ. P. 19(a).  Here, the Tribe has not made any allegations in the Complaint that

    the District and Mr. Slocum are necessary and indispensable parties under Rule 19.

18
19      Even further, the Tribe cannot satisfy the requirements of Rule 19 for joinder of the

    District or Mr. Slocum as defendants in this case.  Application of Rule 19 to the District in
20
    this case involves two key inquiries here: (1) is the District a necessary party and (2) is it
21
    feasible to join the District as a defendant. *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir.
22
    2005), *citing EEOC v. Peabody W. Coal Co.,* 400 F.3d 774, 779 (9th Cir. 2005). *See also*
23
    *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).
24
25      The first inquiry is whether a non-party should be joined under Rule 19(a) as a

    necessary party.  The focal question is whether complete relief can be obtained without
26

1   the non-party's joinder. *Wilbur*, 423 F.3d at 1112.   In the Complaint, the sole relief

2   requested by the Tribe is that the Title Transfer be enjoined until BOR complies with its

3   NEPA and NHPA obligations.

4       On that point, the District's joinder is not necessary to ensure BOR's compliance

5   with the *procedural requirements* of NEPA and NHPA.  NEPA is a procedural statute

6   intended to make federal agencies aware of the impact of their decisions on the human

7   environment. *Dep't of Trans. v. Public Citizen,* 541 U.S. 752, 756-757 (2004).  NEPA

8   does not dictate substantive results or expand agency jurisdiction over land uses: "[I]t is

9   now well settled that NEPA itself does not mandate particular results, but simply

10  prescribes the necessary process. . . . " *Robertson v. Methow Valley Citizens Council*, 490

11  U.S. 332, 350-351 (1989). *See also Cold Mountain v. Garber*, 375 F.3d 884, 892 (9th Cir.

12  2004).   Just like NEPA, NHPA is a procedural statute only.  "Although the obligations

13  imposed by NHPA are 'separate and independent than those mandated by NEPA,' ... the

14  two statutory schemes are closely related." *Apache Survival*, 21 F.3d at 906.  "Both Acts

15  create obligations that are chiefly procedural in nature; both have the goal of generating

16  information about the impact of federal actions on the environment; and both require that

17  the relevant federal agency carefully consider the information produced." *San Carlos*

18  *Apache Tribe*, 417 F.3d at 1097, *citing Pres. Coalition, Inc. v. Pierce*, 667 F.2d 851, 859

19  (9th Cir. 1982).

20      Because those statutes impose strictly procedural requirements on BOR, it is not

21  necessary for the District to be joined as a party defendant.  This case does not involve

22  any statute delegating to BOR substantive regulatory authority over the Transfer Lands.

23  To effectuate compliance with NEPA and NHPA for the procedural violations alleged by

24  BOR in the Complaint, the Court does not have to enjoin or undo the initial Title Transfer,

25  or join the District as a defendant.  Instead, the Court could order BOR to conduct

26  additional environmental review under NEPA and NHPA. *See West v. Secretary of the*

*Dep't of Trans.*, 206 F.3d 920, 925 n.4 (9th Cir. 2000) (finding that effective relief could still be granted for completed highway interchange in the form of additional environmental review); *Cantrell v. City of Long Beach*, 241 F.3d 674, 678-679 (9th Cir. 2001) (effective remedy of additional environmental review still available after destruction of historic buildings); *Makah Indian Tribe*, 910 F.2d at 559 ("the district court has the authority to grant relief on the Makah's procedural claims without the presence of the other tribes").

Again, it bears emphasis that the focus of the Tribe's complaint is potential damages to cultural resources on the Transfer Lands from future uses by ACF and other industrial developers.   As set forth in the FEIS and ROD, the underlying record demonstrates that the initial land transferred by BOR to the District on March 26, 2007 does not contain any *known* cultural resource sites.   Rather, the 19 eligible sites involved in the Title Transfer occur on Transfer Lands that have not been transferred to the District. As a result, there is no immediate danger to any cultural resources within the Transfer Lands, and joinder of the District as a defendant simply is not necessary to address the alleged procedural violations under NEPA and NHPA.

The second inquiry under Rule 19 is whether it is feasible to join the District as a defendant.   It is not feasible to join the District as a defendant because a non-federal party cannot be joined as a defendant in a NEPA case.   A finding that it is feasible to join the District as a defendant would require this Court to disregard the established rule in the Ninth Circuit that a non-federal party cannot be a defendant in a NEPA/NHPA case.   This Court should refrain from doing so.

## IV.   CONCLUSION.

For the reasons noted above, this Court should issue an order dismissing Plaintiff's complaint against the District and Mr. Slocum.

1    DATED this 20th day of April, 2007.

2                                        FENNEMORE CRAIG, P.C.

3

4                                        By s/ *Norman D. James*
                                            Norman D. James
5                                           Todd C. Wiley
                                            Attorneys for Defendant Wellton-
6                                           Mohawk Irrigation and Drainage
                                            District
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## CERTIFICATE OF SERVICE

2

☒   I hereby certify that on April 20, 2007, I electronically transmitted the
attached document to the Clerk's Office using the CM/ECF System for

3   filing and transmittal of a Notice of Electronic Filing to the following
CM/ECF registrants:

4

5   Frank R. Jozwiak
Thane D. Somerville

6   Morrisset, Schlosser, Jozwiak & McGaw
801 Second Ave., Suite 1115

7   Seattle, WA 98104-1509
Attorneys for Plaintiff

8   Richard G. Patrick
Assistant U.S. Attorney

9   United States Attorney's Office
Two Renaissance Square

10   40 N. Central Ave., Suite 1200
Phoenix, AZ 85004-4408

11   richard.patrick@usdoj.gov
Attorney for Federal Defendants

12

13   Michael K. Kennedy
Gallagher & Kennedy

14   2575 E. Camelback Rd.
Phoenix, AZ 85016

15   mkk@gknet.com
Attorney for Arizona Clean Fuels Yuma, LLC

16   ☒   I hereby certify that on April 20, 2007, I served the attached document by
hand delivery on the following, who are not registered participants of the

17   CM/ECF System:

18   The Honorable James A. Teilborg
United States District Court Judge

19   401 W. Washington St.
Phoenix, Arizona 85003

20

21   _____ s/ Mary House _____

22

23   1902160.2

24

25

26

# EXHIBIT

# A

PUBLIC LAW 106–221—JUNE 20, 2000      114 STAT. 351

Public Law 106–221
106th Congress

## An Act

To authorize the Secretary of the Interior to convey certain works, facilities, and titles of the Gila Project, and designated lands within or adjacent to the Gila Project, to the Wellton-Mohawk Irrigation and Drainage District, and for other purposes.

June 20, 2000
[S. 356]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Wellton-Mohawk Transfer Act.

### SECTION 1. SHORT TITLE.

This Act may be referred to as the "Wellton-Mohawk Transfer Act".

### SEC. 2. TRANSFER.

The Secretary of the Interior ("Secretary") is authorized to carry out the terms of the Memorandum of Agreement No. 8–AA–34–WAO14 ("Agreement") dated July 10, 1998 between the Secretary and the Wellton-Mohawk Irrigation and Drainage District ("District") providing for the transfer of works, facilities, and lands to the District, including conveyance of Acquired Lands, Public Lands, and Withdrawn Lands, as defined in the Agreement.

### SEC. 3. WATER AND POWER CONTRACTS.

Notwithstanding the transfer, the Secretary and the Secretary of Energy shall provide for and deliver Colorado River water and Parker-Davis Project Priority Use Power to the District in accordance with the terms of existing contracts with the District, including any amendments or supplements thereto or extensions thereof and as provided under section 2 of the Agreement.

### SEC. 4. SAVINGS.

Nothing in this Act shall affect any obligations under the Colorado River Basin Salinity Control Act (Public Law 93–320, 43 U.S.C. 1571).

### SEC. 5. REPORT.

If transfer of works, facilities, and lands pursuant to the Agreement has not occurred by July 1, 2000, the Secretary shall report on the status of the transfer as provided in section 5 of the Agreement.

Deadline.

114 STAT. 352          PUBLIC LAW 106–221—JUNE 20, 2000

SEC. 6. AUTHORIZATION.

There are authorized to be appropriated such sums as may be necessary to carry out the provisions of this Act.

Approved June 20, 2000.

LEGISLATIVE HISTORY—S. 356 :

SENATE REPORTS: No. 106–21 (Comm. on Energy and Natural Resources).
CONGRESSIONAL RECORD:
Vol. 145 (1999): Mar. 25, considered and passed Senate.
Vol. 146 (2000): June 6, 7, considered and passed House.

○